Thank you both counsel. Thank you. Your honors. Thank you. It's like we're waiting for Mr Rothblatt. Good morning, Mr. Glozman, Mr Rothblatt. Our next case this morning is United States versus Wilson. And we have Mr. Glozman for the appellant. May it please the court. My name is Badim Glozman. And I'm here on behalf of defendant appellant Cordarrell Wilson. This case raises the issue of whether the Chicago Police Department had the requisite suspicion to seize Mr. Wilson. And I think within this issue, there are two inquiries. And that's at what point was Mr. Wilson actually seized, and whether at that point there was the requisite suspicion to seize him. And as this court knows, police may only stop a person if they have reasonable articulable suspicion that he is engaged in criminal activity. And the focus on reasonableness balances the need to seize against the invasion. And because the totality of it, yes, is it the defendant's position that when he was asked to stand up by the officer that he stood up and engaged with the officer and then left? Or was it one continuous motion from having been seated to leave? He stood up and he was engaging with the officer as he was standing up. And I believe that the seizure actually occurred right when the officer ordered him to stand up. He was towering over him. He didn't have any pleasantries to say no questions asked. And he demanded that Mr. Wilson stand up and he gestured to do so. At the same time, there was another officer approaching from the other side of Mr. Wilson. And I know the government has argued that because Mr. Wilson began to flee, he didn't actually comply with the order from the police officers, and thus he wasn't seized until he was actually tackled. I think what that point misses is that all the cases that the government cited to this position is that every single time the defendant or the suspect in the case was actually fleeing at the time there was a order or command said to him. And I think because this totality of circumstances inquiry is fact intensive, we have to look at the facts of what happened on May 16th, 2017. And the police were dispatched to 3104 West Douglas, and they were given a specific description of three males. So let me interrupt you for one second, because I agree with Judge Brennan. I think the difficult part for your case is figuring out when there was a seizure happened because the factors, and of course, we all agree that you have to look at the specific circumstances at the time. But even if there was not reasonable suspicion for a Terry stop when the officer first approached your client, if he wasn't seized under HODAR ID, and he fled, then we're not judging it. At that point, we're judging it at the tackle. And I've watched the video and it looks pretty fluid. I mean, he just stands up and runs. I mean, there isn't a pause where he's engaging. It's just a bolting. So I think it's that moment on which your case turns what happened when the officer said stand up and he took off. Yes, your honor. And if you look at this court's recent opinion and how it even found that the investigatory stop happened as the officer approached how and asked him a question. It was at that point. Now, when HODAR ID deals with a police officer chasing a fleeing suspect, and the suspect ignores the demands of the orders of the police officer. So at no point was HODAR ID actually still or sitting like Mr. Wilson was. Mr. Wilson did not start moving away when officers arrived at the playground. He didn't start moving away as the officers were approached him. This happened after a show of authority occurred. And that's the main difference I think between HODAR ID and Mr. Wilson. And the same thing is in United States verse $32,400 in funds. There the police officers attempted to block in a vehicle that was already moving. And I think it tried to turn around in a cul-de-sac and it hit a police car as it was trying to drive away and then drove away. At no point was that car actually still or faced with a police officer. Same thing in the United States verse Griffin, the police activated lights to curb an already moving vehicle and they attempted to evade the police before submitting United States verse four that was cited by the government. The defendant was walking back away from the officer as the officer was telling him to come forward. He was already moving and I think the last one that the government relied on was United States verse May and the defendant left the area where the officers were arriving to and was weaving through the people and the officers were telling him to stop as the defendant was moving. All of these cases, the defendant was never still and shown the authority by the police officer as Mr. Wilson was. And if you look at the inquiry here and it's what a reasonable person believed he was free to leave and I'm not saying Mr. or arguing that Mr. Wilson was acting reasonably when he got up and ran away because I think we could agree that that wasn't necessarily the reasonable thing to do. But if you look at the upbringing that Mr. Wilson had and this is talked about in Florida verse Bostick and this wasn't a consensual encounter. Judge Alonzo ruled that it wasn't a consensual encounter and we're not disagreeing with him. He didn't voluntarily go up to the officer. He didn't want to interact with officers and when the officers came to the playground, he could have left, he could have start running right away, but he sat down and when the officers came up right in front of him, he was still and that's where the show of authority was and Mr. Wilson did stand up. I agree. It's very on the cusp of where there was fluid or not, but he did stand up and that's the compliance that we need. The government had argued that it's implicit that it's stand up and stay here, but we can't make a subjective determination of what the officer actually wanted. The Supreme Court's already talked about this and Brendan versus California where the officer's subjective intent does not go into a fourth amendment inquiry and and the officer didn't say anything besides stand up. No, there was no pleasantries. No. Hey, how are you? No. Can you talk to us at stand up? Come up here and I know it's a 10th circuit case, but in United States versus Morgan, it's more akin to this and there the defendant was a passenger in a car that was pulled over by the police officers. They got out of the  all the defendant did was say, what do you want? And then he started running away and the 10th circuit and that found that by saying, what do you want? That was enough compliance for there to be a seizure. It was been in 32,400. The cars are pulling up in front and behind of the vehicle that the defendant is in. And then the car in front of the defendant's are the police officer gets out, shows the badge and says, police stop now in the video, the officer wearing red has a badge hanging from his his unmarked uniform and a vest on. But even he doesn't get to that point of any type of interaction that says, um, stop doing something. Instead, he just says, stand up. Aren't the facts here less onerous than in 32,400? Well, there was nothing for the officer to tell Mr Wilson to stop doing because he wasn't doing anything wrong. He was just sitting near a playground, not brandishing any kind of contraband or firearm or drugs. And I think that's part of the facts that we have to look at is there's nothing in the record that even suggests that the bulge that the officers thought was some kind of firearm or drugs or contraband the entire time. They say it's unknown from the time they first seen from a distance to when they come up. And again, the difference between Mr Wilson and the funds of 32,400 is in that case, the defendant was already moving. He was never to stand still. Mr Wilson was just there. And so by four, I mean, you could see the badge. You don't need it. They're in a high crime area where Mr Wilson knows how police officers interact. He knows that they're coming there for a reason. There's multiple officers and all they say is get up and they gesture. And I think he did do even if we go past the point of where all right, it's not a seizure just because he ordered them to stand up, which I believe it is just the fact that he stood up is enough and there's no time limit or time expectation for how long compliance has to be with something. It's this isn't a stopwatch inquiry. We're not here timing. Well, did he comply for five seconds or did he comply for 30 seconds? It's whether or not he did what he was told to do, and he did here. I know the government relies on, I think, Harris versus Smith and United States versus Jeter. In both of those cases, the officers never actually came up to the defendants and Jeter. They were approaching him and he dropped the bike and stopped momentarily but ran before the officers ever got to him. And in Harris, the officers never got to him. He pretended to kneel down and then left. Mr Wilson actually did what he was told to do. And at that point, in that instance, it's the seizure. If it's not when he was ordered to stand up and we would never argue if an officer physically touched a defendant, whether the seizure occurred at that moment, it's the moment that he's physically touched by the officer and he doesn't need to be restrained by the officer for one second or 30 seconds or a minute or whatever it is. It's the second that he's touched. There's a seizure. And I know this happens rarely, but it does. If someone gets handcuffed and then starts running, we don't say that he wasn't seized when he was handcuffed before because he started running afterwards. Mr Glusman, you're way past your rebuttal time. I'll give you a minute for rebuttal, but I think we should stop now and hear from the government. Mr Rathblat. Thank you, Your Honor. It pleases the court. My name is Richard Rathblat and I represent the United States. The district court properly denied the defendant's motion to suppress. I found the defendant was not seized until Chicago Police Department officers detained him following his flight from a brief encounter. By the time defendant was detained, CPD officers have reasonable suspicion based on particularized and objective facts that criminal activity was afoot and defendant was armed and dangerous. On that question, Mr Rathblat, when the officer is approaching the three individuals seated in the park, the shirts don't match. He does see a bulge and there is this discussion in the police report about the defendant covering the bulge. But wouldn't it have been apparent to the officer who in the video was wearing red that there is not a boot on Mr Wilson's leg? Wouldn't he know that just from the way he approached? I think the officer's report, which was appended to as part of the record, reflected that the officer couldn't see the foot until he circled around the defendant. So he initially saw the bulge. He saw the defendant grabbed the bulge in his pocket, and then he went around him to confirm whether or not he had a boot on his foot. So he couldn't see it from a distance but needed to approach. And by the time he requested the defendant to stand up, he was able to confirm that the defendant did not have a boot on his foot. But by that time, he again saw the defendant grabbing the bulge in his shorts pocket and acting evasively. So he had twice confirmed the identity of a bulge in the defendant's pocket in a high crime neighborhood that had been an evasive manner. In addition to those facts, going back to the seizure issue that the court addressed previously, of course, not all encounters with individuals and law enforcement officials are seizures. The defendant is only seized when freedom of movement is restrained by physical force and the defendant concedes there was no application of physical force here. In addition, in order for a show of authority to be meaningful for seizure purposes, the defendant needs to submit to the show of authority. And in this case, the defendant simply did not submit to the show of authority, which was the direction that the defendant stand up. Now, defense counsel claims that in all cases regarding this doctrine, the defendant was already moving, and that's simply inaccurate. I direct the court to the Ford decision in 2003. And there at a nice skating rink, a defendant set off a metal detector. And upon doing so, he was directed by an off-duty police officer to take a step forward. At that time, he's not moving, and he decides to take a step backward. And the court determined there was no seizure until the off-duty police officer physically touched the defendant. So there was no flight and nothing to that end. Instead, it was simply the defendant not complying with the request, which means that the encounter didn't graduate to a seizure until he was physically touched. The defendant maintained that the defendant's action of standing up was momentary compliance. But even the cases he cites that he reflected of the Harris v. Smith decision and the Jeter decision reflect that momentary compliance simply isn't compliance and submission to authority. That's the same in the Griffin case. When the defendant is in his vehicle, pulling over to the side of the road and then speeding off simply isn't submission to authority. And the Second Circuit has held that previously. So the district court properly found that the entire encounter was consensual and that the defendant was not seized until he was later tackled following his flight. In terms of the seizure itself, as the District Court found, it's consistent with the court's findings in Howell, Adair, and Mays. Upon arriving at the scene, the officer saw the defendant clutching a bulge in his pocket on two occasions, moving away from the officer's view as to act evasively. And then when he's asked to stand up, he the officer's reasonable determination that the defendant was on conditioners. So unless the court has any additional questions, the government would ask that the court affirm the district court's ruling denying the defendant's motion to suppress. I don't see any additional questions, so thank you, Mr. Rothblatt. Mr. Glozman, you can have one more minute for rebuttal. Thank you, Judge. I just want to say that Mr. Wilson did actually comply. He stood up and that's all he was asked to do. There was nothing asked more of him and at the moment he stood up is when he complied with it. And with all the reasonable suspicion, I think this court's opinion in Watson, when it vacated and remanded a case for falling on the wrong side of the Fourth Amendment, was right on point where it said the police were right to respond to the anonymous call by coming to the parking lot to determine what was happening. But determining what was happening and immediately seizing people upon arrival are two different things and the latter was premature. And I think coming up to Mr. Wilson, demanding that he stand up and seizing him at that moment was premature based on what the officers knew at that time objectively and particularized to Mr. Wilson. Thank you, Mr. Glozman, and I want to thank you for your service to the court. I see that you were a court-appointed counsel for Mr. Wilson. The case is taken under advisement.